IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUJUAN M. GIBSON,

                Petitioner,

      v.                                 CASE NO. 22-3131-JWL-JPO

DAN SCHNURR,

                Respondent.

## MEMORANDUM AND ORDER

This matter is a pro se petition for writ of habeas corpus pursuant 28 U.S.C. § 2254 filed by Petitioner and state prisoner Jujuan M. Gibson. Petitioner challenges his state court convictions of possession of methamphetamine with intent to distribute, possession of cocaine with intent to distribute, and possession of marijuana with intent to distribute. Having considered the parties' arguments, the state court record, and the relevant legal precedent, the Court concludes that Petitioner is not entitled to federal habeas corpus relief and denies the petition.

### Nature of the Petition

Petitioner's sole ground for relief in this matter is that there was insufficient evidence to support his convictions. The Kansas Court of Appeals (KCOA) rejected this argument and Petitioner argues to this Court that the KCOA's decision requires this Court to issue a writ of habeas corpus because the KCOA unreasonably applied the relevant law to the facts before it.

### Factual and Procedural Background

In August 2019, Officer Skyler Hinton of the Newton, Kansas police department conducted a traffic stop of a vehicle. *State v. Gibson*, 2021 WL 5027477, *1 (Kan. Ct. App. 2021) (unpublished), *rev. denied* May 5, 2022. A search of the vehicle revealed methamphetamine,

cocaine, and marijuana. *Id.* at 2-3. Petitioner, a backseat passenger in the vehicle, was later charged with one count each of felony possession with intent to distribute methamphetamine, possession with intent to distribute cocaine, and possession with intent to distribute marijuana. *Id.* at 1. Petitioner moved to suppress the evidence, and the state district court held an evidentiary hearing, which the KCOA described as follows:

> [Officer Hinton testified that on the night in question,] he observed a white Cadillac SUV driving on I-35 in Harvey County, Kansas. As the vehicle passed, Hinton noticed there was no tag light illuminating the license plate. Hinton decided to initiate a traffic stop.
>
> Officer Hinton testified that after the vehicle pulled over, he saw it had a temporary tag from Kentucky. As he approached the passenger side window, he noticed all four windows were rolled down. According to Hinton, this struck him as "odd" because it was August and the windows were not rolled down as the vehicle passed. He observed two individuals sitting in the middle seats along with the driver. Hinton also smelled the "overwhelming odor of marijuana coming from the vehicle," specifically saying, "[I]t smelled like raw marijuana." Based on his training and experience, Hinton knew that raw marijuana had a different odor than burnt marijuana.
>
> Officer Hinton contacted the driver, Keith Brock, who identified himself as the owner of the vehicle. As Hinton began asking Brock questions, Gibson responded and asked why they were stopped. Hinton explained to Gibson that he stopped the vehicle because of the license plate light not being illuminated. When Hinton gathered documentation, he asked Brock where they were coming from. Again, Brock did not respond but Gibson said they were coming from "up the road" and pointed towards Newton. Gibson asked about the name of the town, but nobody could tell him. He asked where, to which Gibson responded they were visiting friends but could not tell him where or where they just came from. Hinton specifically asked if they knew where they were, and Brock said "they had no idea." During this conversation with Gibson, Brock interjected to say they "didn't know where they were coming from" and were traveling from Arizona to Kentucky. Hinton believed it was "odd" to travel through Newton based on their travel plans.
>
> Officer Hinton testified that he decided to call for backup and once other officers arrived, the occupants were asked to exit the vehicle. At that point, Hinton identified several factors that suggested some sort of drug activity: (1) the route they were taking, (2) all four windows being rolled down, (3) Gibson asking and answering questions instead of Brock, (4) being unable to answer simple questions about travel history, and (5) the odor of marijuana. According to Hinton, he decided to detain all three individuals for safety reasons during the search because they were

> on the side of a highway. Hinton also said Gibson never claimed ownership of the vehicle.
>
> During cross-examination, Officer Hinton testified he knew that marijuana is legal in some capacity in Colorado, Oklahoma, and Missouri. He denied having any specific training to recognize the odor of hemp.

*Id.* at 1-2.

The district court denied the motion to suppress and the case proceeded to a jury trial. As the KCOA summarized:

> At trial, Officer Hinton testified that during the conversations he had with Brock and Gibson while at the side of the vehicle, he noticed an "overwhelming smell of raw marijuana" coming from the vehicle. Hinton testified that he had received training in drug interdiction and controlled substances in his experience as a police officer. He recognized the odor based on investigations in several other marijuana-related cases. Hinton described the odor as "very pungent, I guess. It's a very noticeable—even small minute amounts of it can be very—have a very strong odor."
>
> Officer Hinton also testified that Gibson would not directly answer any questions about ownership of the vehicle, telling him to check the tag which was registered to Brock. However, Hinton later found two bills of sale for the vehicle: one that listed Brock as the owner and a second that listed Gibson as the owner. The bill of sale listing Gibson as the owner had a purchase date of July 29, 2019, and the bill of sale listing Brock as the owner had a purchase date of August 4, 2019. The district court admitted these over Gibson's hearsay objection.
>
> Officer Hinton testified that once he decided to search the vehicle, he requested additional officers to respond to his location to assist and remove the occupants from the vehicle. According to Hinton, this was his typical process based on the number of occupants and for safety reasons. Upon searching the vehicle, Hinton found a "large grocery style bag wrapped numerous times" inside a compartment above the rear driver's side tire. This "flip cubbyhole" was located directly behind where Gibson was seated in the vehicle. Inside the grocery bag was a gallon-size Ziploc style bag that contained a "hard rock crystalline substance" Hinton believed to be methamphetamine, as well as a similar bag containing a white powder that he believed to be cocaine.
>
> Officer Hinton also found another grocery style bag inside a "natural factory void" above the rear driver's side tire that contained two black containers. Hinton recognized these black containers as typically used by dispensaries to sell and transport marijuana. The black containers also had labels affixed that reflected the type of marijuana or the location of the dispensary. Inside the containers, Hinton

found a green leafy substance he recognized as marijuana.

The State moved to admit these items as exhibits, prompting an objection from defense counsel for the reasons stated in the motion to suppress. The district court overruled these objections, standing on its prior ruling.

Officer Hinton later weighed these items and determined the crystalline substance weighed 2.01 pounds, the powder substance weighed 28.6 ounces, and the green leafy substance weighed 78.8 grams. A KBI forensic analyst tested these substances, confirming that the crystalline substance was methamphetamine, the powder substance was cocaine, and the green leafy substance was marijuana. Because of his training and experience, Hinton believed that the amount of drugs and the packing suggested distribution and not personal use.

The vehicle search also revealed two cell phones, a black one found near the driver's seat and a blue one that was found in the second row passenger area. When Officer Hinton approached the vehicle before having Gibson exit, Gibson was leaning over to his right-hand side towards the area of the blue phone. Hinton at first believed the blue phone belonged to the other backseat passenger based on its proximity to her location in the vehicle. The district court admitted the blue phone as an exhibit over Gibson's objection.

On cross-examination, Officer Hinton admitted that Gibson did not appear to be under the influence of any substance during the traffic stop and no illegal substances were found on his person. Searching officers also found no scales or firearms during the vehicle search. All the drugs discovered were hidden behind manufactured panels in the vehicle. Gibson denied any knowledge of the drugs.

Newton Police Lieutenant Mike Yoder testified that he was specialized in cell phone forensics and extracted a download of the data from the blue phone seized during the traffic stop. Newton Police Detective Mitch Nedrow testified that he was the senior narcotics investigator for the Newton Police Department and had specialized training and experience in handling drug investigations. Detective Nedrow testified that Lieutenant Yoder was unable to produce a download and report from the black phone because of the encryption software, but he produced a flash drive with information obtained from the blue phone.

Detective Nedrow testified that Gibson appeared to be the owner of the blue phone based on the contents of the text messages. In particular, one message asked, "[W]ho is this," to which the subject replied, "Jujuan." Another message came from a contact saved as "Mommy," which said, "I love you, Jujuan." Detective Nedrow said there were additional messages, but these were two that specifically stated Gibson's name. Another message came from the female passenger of the vehicle—which Detective Nedrow confirmed by comparing the phone number she gave during booking—that stated, "I can't do this, dude." In addition, using that same process of comparing the number given during booking, Detective Nedrow

determined that Brock sent a message to the phone saying, "Can I have keys to move this to the shade?"

Detective Nedrow believed the following exchange between a contact saved as "Macl" at 5:40 a.m. on August 3, 2019, suggested the purchase of 20 ounces of cocaine for $750:

Macl: "Need you, bro, right when you get up."
Subject: "What you need, bro?"
Macl: "20 of them."
Subject: "20 what?"
Macl: "Gs"
Subject: "Already ready."
Macl: "Give me five minutes."
Subject: "Shoot me 750."

Detective Nedrow believed another exchange at 7:28 p.m. that same day with Macl suggested the sale of either a quarter pound of marijuana or a quarter ounce of cocaine:

Macl: "I got to stop at the crib and get bread real quick. 400 right."
Subject: "For what?"
Macl: "QT."

On August 5, 2019, a contact saved as "11:00 a.m." texted the subject phone "1750 right now." Detective Nedrow believed this message indicated either an offer to supply the subject or purchase from them at that price.

Detective Nedrow also testified about photographs taken from the phone. Exhibit 7A depicted the white Cadillac SUV that was the subject of the traffic stop and vehicle search. Exhibit 7B depicted a personal photograph of Gibson and the female passenger. Exhibit 7C depicted a selfie of Gibson holding a large amount of money. Exhibit 7D depicted a large amount of money fanned out in the hands of a Black male. Exhibit 7E depicted a tabletop with a large amount of money, some of which was rubber banded together, as well a shoe box and trash bags. Exhibit 7F depicted a large amount of gallon-size zip bags containing vacuum seal bags, and some similar bundles. Nedrow believed these contained vacuum sealed marijuana, based on his training and experience. Exhibit 7G depicted a close-up photograph of a black digital scale with a plastic baggie on top containing what appeared to be marijuana. The district court admitted these photographs over Gibson's objection.

Detective Nedrow testified that Gibson was the owner of the phone based on the information in the text messages and photographs, and further that he was involved in a drug distribution network.

*Id.* at 2-4.

5

The jury found Petitioner guilty as charged and the state district court sentenced him to 98 months in prison. *Id.* at 4. Petitioner appealed and, in October 2021, the KCOA affirmed his convictions and sentences; the Kansas Supreme Court denied his petition for review on May 5, 2022. On June 28, 2022, Petitioner filed in this Court a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) The Court reviewed the petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and directed Respondent to show cause why the writ should not be granted. (Doc. 3.) Respondent filed his answer on October 7, 2022 (Doc. 8) and Petitioner filed his traverse on November 4, 2022 (Doc. 10).

### Request for Transcripts

In his traverse, Petitioner asks the Court "to order the state to furnish complete trial transcripts" to him because "the transcripts are essential to assess the constitutional errors at trial, the extent to which petitioner was prejudiced by them, and the unreasonableness of the Kansas courts' decisions." (Doc. 10, p. 1.) In support of his request, Petitioner cites Rule 5 of the Rules Governing § 2254 Cases in the United States District Courts, which sets forth Respondent's responsibilities in the answer to identify and furnish relevant and available transcripts and the Court's authority to order Respondent to "furnish other parts of existing transcripts."

The Court notes that Respondent has electronically filed all relevant transcripts, along with additional parts of the state court record. (Docs. 9-1 through 9-19.) Moreover, as Petitioner acknowledges, he "cites to the transcript" in his traverse, which implies that he already has access to at least some of the relevant transcripts. (Doc. 10, p. 1.) If Petitioner is seeking a free personal hard copy of all trial transcripts, it is well-established that even "an indigent § 2254 petitioner does not have a constitutional right to access a free transcript in order to search for error." *See Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992). In addition, the Court assures Petitioner that it has

6

carefully reviewed and considered all of the relevant transcripts. Thus, the Court denies Petitioner's request to order Respondent to provide additional transcripts.

## Standard of Review

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). In this context, an "unreasonable application of" federal law "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see also Pavatt v. Carpenter*, 928 F.3d 906, 917 (10th Cir. 2019) (noting that the sufficiency of the evidence implicates "'the fundamental protection of due process of law'"). As the Tenth Circuit has explained, when a federal habeas petitioner challenges the sufficiency of the evidence supporting a conviction under state law, the Court must "first determine the elements of the offense and then examine whether the evidence suffices to establish each element. State law governs what the elements are." *Hawes v. Pacheco*, 7 F. 4th 1252, 1264 (10th Cir. 2021) (internal citations and quotation marks omitted). Evidence is constitutionally sufficient if, when "viewed in the light most favorable to the prosecution," it is "sufficient to allow *any* rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt." *See Pavatt*, 928 F.3d at 917 (quoting *Jackson v. Virginia*, 443 U.S.

307, 319 (1979) (emphasis in original)).

The United States Supreme Court has recognized that claims of insufficient evidence to support state court convictions "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Id.*

Finally, the Court presumes that the state court's findings of fact are correct unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). These standards are intended to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require that state-court decisions receive the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

## Discussion

As noted above, the sole ground for relief in this matter is Petitioner's argument that the evidence was insufficient to support his convictions, so his convictions violate his constitutional due process rights. The KCOA addressed this argument as follows:

> Gibson also argues there was insufficient evidence to support his convictions because no evidence showed that he possessed the drugs found during the vehicle search. In essence, he contends the evidence merely showed his

8

proximity to the drugs and that he was not even aware of their existence. The State responds that the strong odor of the marijuana showed he was aware of the drugs, but also that other evidence linked him to drug distribution.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder on the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

The State charged Gibson with three counts of possession of controlled substances with the intent to distribute. K.S.A. 2020 Supp. 21-5705(a) makes it "unlawful for any person to distribute or possess with the intent to distribute" any controlled substance. The district court instructed the jury that "[p]ossession means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

As Gibson notes, the Kansas Supreme Court has recognized that "when a defendant is in *nonexclusive* possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances." *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016) (citing *State v. Anthony*, 242 Kan. 493, 502, 749 P.2d 37 [1988]). In *Rosa*, the Kansas Supreme Court also discussed other relevant factors to consider included: prior participation in drug sales, use of drugs, proximity to the area where drugs are found, the drugs being found in plain view, and the defendant's incriminating statements or suspicious behavior. 304 Kan. at 434.

Relying on *Rosa*, Gibson contends the only factor suggesting he possessed the drugs discovered was proximity to the drugs. On this point, he asserts "[t]he drugs were found in a rear area that was not within [his] reach and were certainly not in plain view." This assertion somewhat misstates Officer Hinton's testimony, which is that the methamphetamine and cocaine were found in a compartment above the rear driver's side tire located directly behind where Gibson was seated in the vehicle. Then, the marijuana was found in a natural factory void above that same rear tire. In addition, the State admitted as evidence a bill of sale showing that Gibson had purchased the vehicle on July 29, 2019, and a subsequent bill of sale

9

showing that Brock purchased the vehicle five days later. So while true that the drugs were not in plain view, after viewing this evidence in the light most favorable to the State, a rational fact-finder could conclude that Gibson had proximity and a possessory connection to the drugs.

Gibson also points out that there was no evidence showing he had drugs on his person, that he used any controlled substance, or claimed ownership of the drugs found in the vehicle. The State only addresses Gibson's claimed lack of knowledge about the drugs, asserting the jury could infer from Officer Hinton's testimony about the "'overwhelming'" smell of marijuana that Gibson also knew about the marijuana. Similarly, the State points out that the long road trip supported a reasonable inference to reject his claim about the lack of knowledge of the contents of the vehicle. In addition, the fact that Gibson began answering questions for the driver supports a reasonable inference that he was both aware of the drugs and exercised some form of dominion or control over the situation.

The State mainly focuses on the circumstantial evidence that Gibson was involved in prior drug sales to support his convictions. Although Gibson acknowledges that the State presented evidence of text messages and photographs obtained from his phone that connect him to prior drug sales, he challenges whether that evidence connects him to the drugs discovered in the vehicle. But the State presented this evidence not to directly show he possessed the drugs involved here, but rather as circumstantial evidence from which the jury could infer that Gibson was involved in drug distribution. Although the State did not admit the text messages themselves as evidence, the substance of some messages were read and described to the jury with no objection. These messages established that the user of the phone identified himself as Jujuan and participated in likely drug transactions. Moreover, pictures obtained from the phone show large quantities of money and marijuana packaged in such a way to suggest a drug distribution network. Viewing this evidence in the light most favorable to the State, a rational fact-finder could conclude based on this circumstantial evidence that Gibson was involved in a drug distribution network.

In sum, we believe there was sufficient evidence presented to find Gibson guilty in this case. A rational fact-finder could infer based on the circumstantial evidence presented that Gibson was guilty of possessing the controlled substances in this case because of his participation in drug distribution and the fact that he was travelling across multiple states in a vehicle where large quantities of drugs were hidden.

*Gibson*, 2021 WL 2021 5027477 at *10-12.

In this federal habeas case, Petitioner argues that the evidence at trial "failed to prove that [he] had knowledge and control of the contraband hidden in" the vehicle. (Doc. 10, p. 6.) As he

10

did in state court, he also argues that the evidence detailed above showed that Mr. Brock owned the vehicle they were in, the photographs and text messages did not show a connection between Petitioner and the drugs found in the vehicle, and he was convicted "based on mere proximity to drugs." *Id.* at 8. Thus, Petitioner contends, the KCOA's analysis of his argument was unreasonable.[1] *Id.* at 7-9.

After carefully considering the state-court records, the KCOA's analysis, the relevant legal standards, and the parties' arguments in this proceeding, the Court finds no basis on which to grant federal habeas relief. The KCOA utilized a standard of review in step with the comparable federal standard of review, so the decision was not "contrary to" clearly established federal law. *See* 28 U.S.C. § 2254(d)(1) (allowing relief when a state court decision is "contrary to" clearly established federal law); *Jackson*, 443 U.S. at 319 (setting forth federal standard of review for sufficiency of the evidence); *Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019) (defining a decision "contrary to" clearly established federal law as one that "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from that precedent."). Thus, the question is whether the KCOA's conclusion that the evidence was sufficient to support Petitioner's convictions was an objectively unreasonable application of the controlling law, *see* 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(2). The Court concludes that it was not.

---

[1] Liberally construing the traverse, as is appropriate since Petitioner proceeds pro se, Petitioner also argues that the text message and photographic evidence was improperly considered as propensity evidence, in violation of K.S.A. 60-455. (Doc. 10, p. 9.) The Court need not address this argument further because a state court's erroneous interpretation or application of state law "'does not warrant habeas relief[.]'" *See Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir. 2021)(quoting *Boyd v. Ward*, 179 F.3d 904, 916 (10th Cir. 1999)).

Petitioner was convicted of three violations of K.S.A. 21-5705(a) for "possess[ing] with the intent to distribute" methamphetamine, cocaine, and marijuana. As the KCOA noted, Kansas law defines "possession" as "'having joint or exclusive control over an item with such knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control.'" *Gibson*, 2021 WL 5027477. At their core, Petitioner's arguments ask this Court to reweigh the evidence presented at trial and reach a different conclusion than both the jury and the KCOA. But, as noted above, the relevant question is not whether this Court would have reached a different conclusion than the jury and/or the KCOA. Rather, this Court may grant relief "only if the state court decision was 'objectively unreasonable." *See Coleman*, 566 U.S. at 651.

The Court does not find the KCOA's decision objectively unreasonable. To the contrary, the Court agrees with the KCOA that the evidence, when viewed in the light most favorable to the prosecution, was sufficient for a rational juror to find beyond a reasonable doubt that Petitioner was guilty of possessing the drugs in question with the intent to distribute them. The circumstantial nature of the evidence does not render the KCOA's conclusion unreasonable; it is well-established that "even in a criminal prosecution where the highest standards of proof are required, guilt may be shown by circumstantial evidence." *See Fed. Power Comm'n v. Fla. Power & Light Co.*, 404 U.S. 453, 469 (1972). Thus, Petitioner is not entitled to federal habeas relief.

**Evidentiary Hearing**

Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court determines that an evidentiary hearing is not required in this matter. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474

(2007); *see also Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."). The record in this case is sufficient to resolve the sole issue before the Court and it precludes habeas relief.

## Conclusion

For the reasons set out above, the Court concludes Petitioner is not entitled to federal habeas corpus relief. Because the Court enters a decision adverse to Petitioner, it must consider whether to issue a certificate of appealability. *See* Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right" and the Court identifies the specific issue that meets that showing. *See id.*; *see also* 28 U.S.C. § 2253(c)(2). Having considered the record and the parties' arguments, the Court finds Petitioner has not made a substantial showing of constitutional error in the state courts and declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for habeas corpus is denied. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:  This 9th day of November, 2022, at Kansas City, Kansas.

S/ John W. Lungstrum

JOHN W. LUNGSTRUM
United States District Judge